IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANTHONY SEDILLO, GLEN
STOUT, GEORGE VEGA,
      Plaintiffs,

vs.                                                      No. 14-CV-00019 JAP/SMV

CITY OF ALBUQUERQUE,
      Defendant.

**MEMORANDUM OPINION AND ORDER**

On May 12, 2014, Defendant City of Albuquerque filed DEFENDANT CITY OF ALBUQUERQUE'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 19) and DEFENDANT CITY OF ALBUQUERQUE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (Doc. No. 20) (collectively "Motion") asking the Court to dismiss Plaintiffs' claims. Plaintiffs, three Albuquerque police officers, oppose the Motion. Plaintiffs argue that the Albuquerque Police Department's (APD) decision to award additional points to college-educated candidates during the 2011 and 2013 promotional process for lieutenant was (1) in breach of contract, (2) a violation of the Due Process Clause, and (3) a violation of the Equal Protection Clause. *See* PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 29) (Response). Having considered the Motion, the argument of the parties, including DEFENDANT CITY OF ALBUQUERQUE'S REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 36) (Reply), and the applicable law, the Court concludes that the City of Albuquerque did not breach its employment contract and that the practice of favoring college-educated candidates for promotion did not

1

violate Plaintiffs' due process or equal protection rights. Accordingly, Defendants' Motion will be granted.

I.   **BACKGROUND**[1]

    A. **APD Promotional Procedures**

When making promotions to the rank of lieutenant, APD follows a four-phase process, described in the Personnel Rules and Regulations: (1) determination of eligibility, (2) compilation of a promotional score, (3) creation of a promotional list, and (4) selection from the list for promotion. Affidavit of Loc T. Truong, Exhibit A to Motion (Doc. No. 20-1 ¶¶ 7, 54); Police Promotional Procedures, Exhibit A-1 to Motion (Doc. No. 20-2 at 1).

<u>Determination of Eligibility:</u> To be eligible for a promotion to lieutenant, an APD sergeant must have (1) worked as a sworn APD officer for at least eight continuous years, three of which must have been served as a sergeant, (2) not committed certain disciplinary infractions within two years of the application for promotion, and (3) elected to participate in the promotional process by signing a request roster. Truong Aff. ¶¶ 41-15, 17. Only sergeants who meet these qualifications may participate in the lieutenant promotional process. *Id.* ¶ 13.

<u>Compilation of a Promotional Score:</u> Once a pool of eligible applicants has been collected, APD administers a series of tests and assigns ratings to candidates in what it terms the "promotional process." The promotional process consists of four sequential components: (1) a written examination, (2) an assessment center examination, involving situational exercises, (3) an experience rating, and (4) an education rating. *Id.* ¶¶12, 23. The written examination, which occurs first, is worth forty points. *Id.* ¶ 19. To advance in the promotional process, a candidate

---

[1] While Plaintiffs dispute some of Defendant's statement of material facts as "taken out of context" or as being "misleading," Response at 1-7, the following facts are undisputed. The Court notes that Plaintiffs' disputes with Defendant's facts are, for the most part, better characterized as arguments about how to interpret the facts and arguments about what facts are relevant.

must score at least 70% on the written exam and must rank among a predetermined number of the highest-scoring applicants. *Id.* ¶¶ 20-21. The assessment center exam is worth fifty points. *Id.* ¶ 22. Once again, a candidate must score at least 70% to continue to be considered for a promotion. *Id.* ¶ 25. After both the written exam and the assessment center exam have been given, APD assigns officers additional points for experience and education: candidates receive .125 points for each year of service as an officer, .1665 points for each year of service as a sergeant, and 5 points if they have obtained a college degree. (There is a 5-point cap on experience points). *Id.* ¶¶ 26-29. The sum of a candidate's written score, assessment center score, experience rating, and education rating is that candidate's combined promotional score. *Id.* ¶ 31.

Creation of Promotional List: Next, APD creates a promotional list of the candidates with the highest promotional scores. "To be placed on the promotional list, officers must achieve a final combined promotional score of [at least] 70%." *Id.* ¶ 33. The number of officers on this list is predetermined by APD's Human Resources Department before the promotional process begins. *Id.* ¶ 34.

Selection from the Promotional List: The final step occurs when a position becomes open, at which time selections from the promotional list are made according to the "Rule of Three." *Id.* ¶ 36. This rule requires the Police Chief to promote one of the three top-ranked officers on the list. *Id.* ¶ 37. Significantly, "[t]he promotional list is perpetual, meaning the Police Chief must make selections from that list until it is exhausted." *Id.* ¶ 35. Candidates remain on the promotional list until promoted, or until they commit a disciplinary infraction resulting in their removal from the list. *Id.* ¶¶ 38-39.

### B. Adoption of Awarding Education Points

APD has not always awarded education points to lieutenant candidates. *Id.* ¶ 46. Prior to 2001, during the time Plaintiff Glen Stout and Plaintiff Anthony Sedillo were hired, APD treated candidates with college experience and those without college experience equally. *Id.* ¶¶ 47-48; Affidavit of Glen L. Stout, Exhibit A to Response (Doc. No. 29-1 ¶ 5); Affidavit of Anthony Sedillo, Exhibit B to Response (Doc. No. 29-2 ¶ 4). When favoring candidates with college coursework was first proposed, the Albuquerque Police Officers Association, the bargaining unit for all officers, "expressed concerns that its members would not have time to earn the preferred educational level for the next promotional exam." Truong Aff. ¶¶ 51-52. To alleviate this problem, APD waived the educational component during the 2002 promotional process. *Id.* ¶ 53. However, since that time, APD has awarded education points in every promotional process in accordance with the modified Personnel Rules and Regulations. *Id.* ¶ 54.

### C. Plaintiffs' Participation in the Promotional Process

Based on the following evidence, Plaintiffs claim the educational component of the lieutenant promotional process has prevented them from receiving promotions. Plaintiff Anthony Sedillo participated in the 2011 lieutenant promotional process. *Id.* ¶ 59. His combined promotional score, 74.3561, was insufficient for him to be placed on the promotional list, as the scores of the successful candidates ranged between 78.2588 and 85.4301. *Id.* ¶¶ 61-63. Had Anthony Sedillo received five points for education he would have made the promotional list.

Similarly, all three Plaintiffs participated in the 2013 lieutenant promotional process and failed to qualify for the promotional list because they lacked a college degree. *Id.* ¶¶ 67, 73. In that year, successful candidates scored between 76.3877 and 86.5249. I*d.* ¶ 72. By comparision,

4

Anthony Sedillo scored 74.1699, *id.* ¶ 69; Glen Stout scored 75.9440, *id.* ¶ 70; and George Vega scored 75.2586, *id.* ¶ 71.

## II. STANDARD OF REVIEW

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The party seeking summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted). Once the movant meets this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In considering a motion for summary judgment, then, the Court's "role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate factfinder, to sustain her claim." *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002).

## III. DISCUSSION

### A. Breach of Contract

"[E]very contract in New Mexico imposes the duty of good faith and fair dealing upon the parties in the performance and enforcement of the contract." *Paiz v. State Farm Fire & Casualty Co.*, 118 N.M. 203, 212 (1994). Here, Plaintiffs argue that Defendant violated the implied covenant of good faith and fair dealing by failing to provide a "fair and equitable"

5

promotional process for non-degree lieutenant candidates in 2011 and 2013. Response at 11. To prevail on this claim, Plaintiffs must produce evidence that shows Defendant acted in "bad faith" or that Defendant "wrongfully and intentionally used the contract to the detriment of [Plaintiffs]." *Sanders v. FedEx Ground Package Sys.*, 144 N.M. 449, 452 (2008). Central to this determination are the "reasonable expectations" of the parties, which the implied covenant is designed to safeguard. *Id.* at 451. In other words, the raison d'être for the implied covenant of good faith and fair dealing is "making effective [an] agreement's promises." *Id.* at 452. Thus, "it is breached only when a party seeks to prevent the contract's performance or to withhold its benefits from the other party." *Id.*

Consistent with these principles, a court may insert an otherwise unspoken obligation into a contract only if "it is clear . . . from the relevant parts of the contract taken together and considered with the facts and circumstances surrounding the execution of the agreement, that the obligation in question was within the contemplation of the parties or was necessary to effect their intention." *Cont'l Potash, Inc. v. Freeport-Mcmoran, Inc.*, 115 N.M. 690, 704 (1993). In no circumstances may the implied covenant negate express contractual provisions, fabricate completely novel conditions, or otherwise redesign the basic terms of the bargain. *Sanders*, 144 N.M. at 452. The implied covenant is merely a tool for ensuring that each party receives that for which the party negotiated. Like every breach of contract claim, it requires a showing that the plaintiff has failed to receive benefits as promised under the agreement. *Id.*

Plaintiffs have failed to make such a showing. Plaintiffs do not identify any terms of the employment contract, discussions, or other evidence to support their claim that they had a reasonable expectation in a promotional process that did not favor candidates who had completed college coursework. While Defendant did not have a policy of awarding educational preference

6

points at the time Plaintiffs Glen Stout and Anthony Sedillo were hired, the Court cannot automatically infer that the continued maintenance of this system was "within the contemplation of the parties," such that Defendant's subsequent implementation of the educational component of the promotional exam constitutes violation of the covenant of good faith and fair dealing. *See Cont'l Potash*, 115 N.M. at 704. In the absence of evidence that Defendant has deprived Plaintiffs of a benefit within the scope of the contract, Plaintiffs cannot prevail and summary judgment in favor of Defendant is appropriate.

Plaintiffs' arguments concerning the alleged superiority of a veteran with military experience to a lieutenant candidate with an art degree are immaterial. The implied covenant of good faith and fair dealing is not a backdoor through which the Court may evaluate the overall fairness of an employment contract. As previously explained, the implied covenant does not entitle Plaintiffs to receive any benefits other than those agreed to (explicitly or implicitly) by the parties, no matter how inequitable or unfair Plaintiffs believe Defendant's promotional policy to be. Consequently, the Court's subjective assessment of the "fairness" of the educational point system is irrelevant. Because Plaintiffs have not produced any evidence indicating that they reasonably expected to be considered for a promotion without regard to their educational experience, Plaintiffs' breach of contract claim fails as a matter of law.

### B. Due Process

The Due Process clause of the Fourteenth Amendment states: "No State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. As interpreted by the courts, this clause encompasses two distinct rights: (1) a right to procedural due process, which requires states to employ fair procedures when depriving a person of a protected interest; and (2) a right to substantive due process, which guarantees that a state cannot

arbitrarily deprive a person of a protected interest no matter what procedure is followed. *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2006). When asserting either right, however, a "plaintiff must first establish that a defendant's actions deprived plaintiff of a protectable property interest." *Id.*

For the purposes of the Fourteenth Amendment, a protectable property interest exists if the plaintiff has a "legitimate claim of entitlement" to the benefit in question. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it."). In this regard, what constitutes "property" under the Fourteenth Amendment is generally defined by principles of state law, including principles of contract law. For instance, "a right to a particular [employment] decision" may be a protectable property interest if this decision is "reached by applying rules to facts." *Hyde Park*, 226 F.3d at 1210. On the other hand, an employment benefit "is not a protected entitlement if government officials may grant or deny it in their discretion." *Schulz v. City of Longmont*, 465 F.3d 433, 444 (10th Cir. 2006).

Plaintiffs argue that they have a protectable property interest in a promotion under the current version of the Personnel Rules and Regulations because the promotional process is not discretionary. As Plaintiffs emphasize, there are fixed rules determining who is placed on the lieutenant's promotional list. Furthermore, the promotional list, once created, is perpetual, "meaning the Police Chief must make selections from that list until it is exhausted." Truong Aff. ¶ 35. As a result, any officer who meets the predetermined requirements to be placed on the lieutenant's promotional list is, as long as the officer remains in good standing, guaranteed a promotion at some point in the future. Despite these features of the promotional process, Defendant claims there are too many contingencies for Plaintiffs to claim a vested property

interest in a promotion. While the Court believes Plaintiffs have the better of this argument, it need not rule on this issue.

Even if the Personnel Rules and Regulations are sufficiently detailed and predetermined to grant officers a protectable property interest in a promotion to lieutenant, the scope of this property interest is necessarily defined by the rules themselves. *See Jordan-Arapahoe, LLP v. Bd. of County Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011) (the "identification of . . . benefits and the 'legitimate claim of entitlement' to them is determined . . . largely by state law"). Here, it is undisputed that Plaintiffs did not satisfy the requirements to be placed on the promotional list. Thus, they did not hold a property interest in a promotion.[2] *See Eisenhour v. Weber County*, 744 F.3d 1220, 1233 (10th Cir. 2014) (explaining that a plaintiff "lacked a property interest in the opportunity for early retirement" because the plaintiff had not accumulated the prerequisite 25 years of service to qualify for this benefit under state law). In other words, Plaintiffs do not have a "legitimate claim of entitlement" to a promotion under the current version of the Personnel Rules and Regulations and their due process claims fail as a matter of law.

It is conceivable that Plaintiffs had a protectable property interest in the continued maintenance of the prior version of the Personnel Rules and Regulations. Plaintiffs' Response briefly alludes to such a claim by arguing that the "change to the Personnel Rules and Regulations" was unconstitutional because "Defendant did not provide an adequate means of disputing the changes." Response at 17. However, Plaintiffs never fully develop this argument and have failed to provide the Court with any admissible evidence supporting their claim that they had a property interest in the continued maintenance of the promotional process in effect at

---

[2] Plaintiffs disagree on the basis that they "scored high enough on all non-discriminatory steps of the promotional process to make the list." However, they do not cite any law that would support disregarding alleged "discriminatory" conditions when evaluating whether a property right exists under the Fourteenth Amendment.

the time they were hired. As the parties opposing summary judgment, Plaintiffs cannot rest their case on mere argument. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) ("Although the movant must show the absence of a genuine issue of material fact, he or she need not negate the nonmovant's claim. Once the movant carries this burden, the nonmovant cannot rest upon his or her pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof."). Defendant provided copies of the current Personnel Rules and Regulations and argued this evidence did not support a finding that Plaintiffs had a property interest in a promotion. To the contrary, Plaintiffs have not produced any evidence from which a reasonable juror could find that Plaintiffs had a contractual right or entitlement to a static set of promotional procedures. In the absence of this evidence, Defendant is entitled to summary judgment.[3]

### C. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment guarantees that "no state shall . . . deny to any person within the jurisdiction to the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause 'keeps governmental decision makers from treating differently persons who are in all relevant respects alike.'" *Soskin v. Reinertson,* 353 F.3d 1242, 1247 (10th Cir. 2004) (quoting *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992)); *see also Corder v. Lewis Palmer School Dist. No. 38,* 566 F.3d 1219, 1233 (10th Cir. 2009) ("Equal protection 'is essentially a direction that all persons similarly situated should be treated alike.'")

---

[3] Even if Plaintiffs had provided such evidence, the Court is skeptical as to the validity of this claim. In *Darr v. Town of Telluride*, 495 F.3d 1243 (10th Cir. 2007), the Tenth Circuit held that a town in Colorado provided its employees with adequate notice and an opportunity to be heard concerning changes to the employment manual when the town sent out a notice about a public hearing concerning the revisions and the employee-plaintiff received and signed a copy of the revised manual. *Id.* at 1254. While neither party provided the Court with admissible evidence concerning the procedure Defendant followed in revising the promotional policy, Defendant argues that the changes were made after "notice, public hearing, and comments on the proposed changes." Reply at 8.

(quoting *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985)). The threshold elements of an Equal Protection claim are essentially two-fold: the plaintiff must show (1) that he or she is a member of a class of individuals (2) that is being treated differently from similarly situated individuals that are not in that class. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985).

Once this is established, the Court must consider whether the challenged classification is constitutionally permissible. The Equal Protection Clause is not a ban on all distinctions. The level of court scrutiny of a particular government action depends on the nature of the classification. "Unless a statute being challenged on equal protection grounds jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, it will be presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Coalition for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008). Despite their arguments that Defendant's promotional policy has a disparate impact on older officers, married officers, and veterans, Plaintiffs concede that rational-basis review is the appropriate standard in this case. Response at 19-22.

Under this lenient standard, it is clear that Defendant's practice of awarding additional points to candidates with college coursework is constitutionally permissible. *See Bryan v. City of Des Moines*, 261 N.W. 2d 685 (Iowa 1978) (holding that a one-year educational requirement for police-force promotions did not violate the Equal Protection Clause). There are multiple reasons to believe that preferring candidates with college experience will advance the legitimate purpose of acquiring good police lieutenants. "College education helps foster qualities which are essential in a modern police officer, including leadership, intellectual curiosity, analytical ability,

articulateness, and an ability to cope better with the human problems encountered routinely in police work." *Id.* at 687.

Plaintiffs contend that the educational-point system is irrational because it favors college graduates over those with arguably relevant law enforcement training, such as veterans. Plaintiffs misunderstand the purpose of rational-basis review. Those with prior military training may be equally qualified to act as a lieutenant as those with a college education, although this proposition is itself debatable. However, even if Plaintiffs are correct, their argument does not in any way negate the rational connection between college education and having a high quality police force. Regardless of Plaintiffs' desires, "[i]t is no requirement of equal protection that all evils of the same genus be eradicated or none at all." *Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 110 (1949). Similarly, the Equal Protection Clause does not force government entities to concurrently pursue benefits "of the same genus" or forfeit the right to these benefits entirely. *See New York City Transit Authority v. Beazer*, 440 U.S. 568, 592 (1979) (explaining that a city's policy against hiring methadone users, while arguably "broader" than necessary, did not violate the Equal Protection Clause). In other words, "there need not be a perfect fit between purpose and achievement for a law to pass constitutional muster." *Schanzenbach v. Town of Opal*, 706 F.3d 1269, 1276 (10th Cir. 2013).

Because there is an obvious theoretical connection between preferring candidates with educational experience and Defendant's purpose – hiring the best possible sergeants and lieutenants – Plaintiffs' Equal Protection claim fails. For the reasons previously discussed, it is makes no difference whether Defendant follows the same exact policy when filling higher-level positions in the police force. The bottom line is that a plaintiff will not prevail on an equal

protection claim "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Teigen v. Renfrow*, 511 F.3d 1072, 1083 (10th Cir. 2007).

IT IS THEREFORE ORDERED THAT:

1. DEFENDANT CITY OF ALBUQUERQUE'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 19) is GRANTED.

2. The Court will dismiss Plaintiffs' breach of contract, due process, and equal protection claims with prejudice.

_____
SENIOR UNITED STATES DISTRICT JUDGE